IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 12, 2015

**STATE OF TENNESSEE v. DANA YEARWOOD**

**Appeal from the Circuit Court for Van Buren County**
**No. 2345-F, 2360-F, 2387-F    Larry B. Stanley, Jr., Judge**

———————————

**No. M2014-01622-CCA-R3-CD – Filed March 11, 2016**

———————————

The Defendant-Appellant, Dana N. Yearwood, appeals the trial court's revocation of her probation and reinstatement of her effective five-year, eleven-month, and twenty-nine day sentence in the Department of Correction. In this appeal, Yearwood argues that the trial court improperly reinstated a sentence of confinement without consideration of her presentence report and improperly revoked her probation.[1] Upon our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT L. HOLLOWAY, JR., JJ., joined.

Andrew E. Mills, Dickson, Tennessee, for the Defendant-Appellant, Dana Yearwood.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Lisa Zavogiannis, District Attorney General; and Randal L. Gilliam, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

On September 24, 2012, the Defendant-Appellant, Dana Yearwood, entered guilty pleas to attempted tampering with evidence, a Class D felony (Case No. 2345-F); delivery of a Schedule II drug, a Class C felony (Case No. 2360-F); and theft under $500, a Class A misdemeanor (Case No. 2387-F). See T.C.A. §§ 39-12-101, -14-103, -16-503. For these offenses, the trial court sentenced Yearwood as a Range I, standard offender to a total effective sentence of five years, eleven months, and twenty-nine days. Yearwood

---

[1] Oddly, this court received two appellate briefs from two different attorneys on behalf of the Defendant-Appellant. The attorney of appellate record (Mills) filed a brief, and another attorney (J. Al Johnson) filed a brief raising the same issues.

was ordered to serve thirty days in confinement, with the remainder of her sentence suspended to supervised probation. She was also required to perform fifty-two total hours of community service and pay restitution, court costs, and a fine of $2,000.

On July 22, 2013, a warrant was filed alleging that Yearwood violated her probation when she was arrested and charged for disorderly conduct and criminal trespass in Van Buren County on July 7, 2013. The warrant was amended on August 26, 2013, to reflect that the July 7, 2013 charges had been dropped. The amended warrant also alleged that Yearwood committed additional violations of her probation prior to the disposition of those charges when she was arrested on August 7, 2013, and charged in Warren County for driving under the influence (DUI), possession of a Schedule IV drug, and possession of a Schedule III drug. The warrant was amended again on March 24, 2014, alleging that Yearwood had further violated her probation between February 20 and February 22, 2014, after she was arrested and charged in Van Buren County for aggravated burglary, theft, domestic assault, simple possession of a Schedule IV drug, possession of a Schedule III drug, possession without a prescription, and initiating a false report.

At the July 28, 2014 revocation hearing, Yearwood admitted that she had violated the terms and conditions of her probation based on her August 7, 2013 arrest for DUI, without admitting guilt to the offense itself. Vickie Rowland, a probation and parole officer, testified that she had been supervising Yearwood since her release from jail in October of 2012. Yearwood was employed from December 2012 to February 2013, and failed to make any payments toward her fines and costs during that time. Yearwood did not make a payment toward her court costs until July 15, 2013, after she had obtained new charges for disorderly conduct and criminal trespass in Van Buren County. Although these two charges were dismissed in September 2013, Yearwood had incurred additional charges on August 7, 2013, in Warren County for DUI, possession of alprazolam, a Schedule IV drug, and possession of hydrocodone, a Schedule III drug. During the pendency of Yearwood's case in Warren County, she was arrested again and charged in Van Buren County for aggravated burglary, theft, domestic assault, simple possession of a Schedule IV drug, possession of a Schedule III drug, possession without a prescription, and initiating a false report.

Officer Rowland additionally testified that during a home visit, Yearwood admitted that she might have smoked synthetic marijuana. However, a problem occurred with Yearwood's drug specimen during transit, and it was never tested. Yearwood failed to start her community service work while she was unemployed and owed restitution to the victim of the theft.

On cross-examination, Officer Rowland testified that she had not investigated Yearwood's social history but had asked Yearwood about her family life in their initial interview. She did not remember whether Yearwood had specifically mentioned any family problems. She agreed, however, that she was aware that Yearwood had two children by age sixteen. She also recalled that Yearwood said that she had never used non-prescribed or illegal drugs. Officer Rowland acknowledged that she had advised Yearwood to "hold off" on her community service obligation when she was employed, but directed Yearwood to do community service when she was not working.

Before taking the witness stand, Defendant-Appellant Yearwood addressed the court with the following:

> I guess all I can say is I did violate the terms of my probation. I do have a bit of a drug problem. I want to say that I'm sorry. I apologize but I would just ask that you look at some of the things that my attorney has mentioned. I understand I have a lot of charges against me. I don't know what else to say for myself.

Yearwood testified about her family history, noting that she had two children by age sixteen and two more children that died when she was eighteen. Her father died when she was young, and her mother had recently passed away. She had been in the judicial system since age fourteen and had been "sent off" into state custody at age fifteen. Her two oldest children were removed from her custody when she was eighteen, but she had recently reestablished a relationship with them. She said that her "childhood wasn't good," but acknowledged that this was not an excuse for her behavior as an adult. In regard to her community service obligation, Yearwood testified that her probation officer knew she was working twelve hours a day, seven days a week while employed. She said that she had to stop working because she was injured in a car accident and because she was taking care of her ill mother.

Yearwood admitted that she lied to Officer Rowland about her drug history. She testified that, starting at age eighteen, she developed a drug addiction to prescription pills. She thought that her drug problem had been a major underlying factor that contributed to her criminal conduct. She was determined to be eligible for Drug Court and requested to be placed in the program. Yearwood conceded that, although she had been on probation for nearly two years, she had never advised her probation officer that she had a drug problem.

At the conclusion of the hearing, and following the arguments of counsel, the trial court revoked Yearwood's probation and ordered her to serve her original sentence in confinement, with credit for time served. In support of its decision, the trial court stated:

Ms. Yearwood has admitted through her counsel that she violated her probation Case Number 2345, 2360, and 2387. I want to make it very clear that the Adult Recovery Program or Drug Court Program as it is referred, it is not a get-out-of-jail-free card and I think sometimes people think of it that way and they think I'll go ahead and do whatever I want to do and then if I get caught I'll apply there and that way I won't have to go to jail and that's not how that works.

Ms. Yearwood, all of the probation officers that work in this district know very specifically that I encourage them to assist their probationers and any time, especially with regard to drug addiction, if they need a place to live, if they need assistance with inpatient treatment facility or classes or whatever, they've all been told very specifically by me that they are to assist their probationers in doing that. The one thing that you have to do is ask and in this situation you have not done that. Mr. Johnson makes a very eloquent argument about trying to help you get better but I think there is an overriding argument that when you become an adult there comes a time when you have to pay for what you do and you have to take personal responsibility for what you do. I do agree that you have had a difficult childhood, a difficult young adult life but at some point that's got to come to an end. You had an opportunity to have a job. You had an opportunity to do better with your children and it just continues to get worse and worse and worse and you continue to do these things knowing very specifically that you faced almost six years in jail. And didn't ask for help. Mr. Johnson says what harm could there be? I see a lot of harm in driving under the influence, possibility of being convicted of aggravated burglary, attempting to tamper with evidence, delivering amphetamines. I see a lot of harm to the community and I think it would be – I think the citizens of Van Buren County would be aghast if I let you walk out of this courtroom knowing that you have done what you have and not taken really any steps necessary to try to correct it or make yourself better.

So therefore, I'm revoking your probation in Case Number 2345, 2360, and 2387 and I do hope that you get the help that you need and I also hope that you understand that any conviction in the future is going to be dealt with severely, whether it's from me or some other judge, with this sort of record. Good luck.

The trial court issued a written revocation order, from which Yearwood now appeals.

## ANALYSIS

On appeal, Yearwood argues that the trial court erred in reinstating her original sentence of confinement without utilizing her presentence report and improperly revoked her probation. She specifically claims that the imposition of a contested sentence of incarceration is governed by the sentencing principles set forth in section 40-35-210, which require, among other things, consideration of a presentence report. See T.C.A. § 40-35-210 (b)(3)(1)-(7). Without the aid of the presentence report, she argues that "[h]er criminal history, her drug addi[c]tion, [and] her difficult childhood and early young adulthood . . . were not fully analyzed[.]"

We disagree. As an initial matter, Yearwood's argument is misplaced in the context of a revocation hearing. Pursuant to her plea agreements, Yearwood accepted an effective five-year, eleven-month, and twenty-nine day sentence. She cannot now complain that her original, agreed-upon sentence was not in keeping with the purposes and principles of sentencing. A defendant is not subject to resentencing under the sentencing guidelines as a result of a probation violation. State v. Calvin Reeves, No. M2002-02976-CCA-R3-CD, 2004 WL 1488570, at *2 (Tenn. Crim. App. July 2, 2004). In a probation revocation hearing, the trial court lacks authority to impose a new sentence or to increase the duration of the original sentence. Id. at *2 (citing State v. Taylor, 992 S.W.2d 941, 945 (Tenn. 1999)); see also State v. Steven Thacker, No. M2011-01061-CCA-R3-CD, 2012 WL 1072005, at *3 (Tenn. Crim. App. Mar. 28, 2012) ("Because the trial court's authority is limited by the nature of the proceedings, it follows that the trial court is not obligated to consider the sentencing statute in a probation revocation hearing."). In any event, the record reflects that Yearwood testified fully regarding her family history and drug abuse, and the court considered this evidence in its analysis. Therefore, we do not consider the absence of the presentence report of any consequence, and Yearwood is not entitled to relief on this issue.

Yearwood further argues that the trial court abused its discretion in revoking her probation by improperly using her previous convictions as a basis for revocation. She claims that the trial court denied her due process and the right to "a neutral and detached hearing body." The State argues, and we agree, that there was substantial evidence to justify revocation of Yearwood's probation.

After determining that a defendant "has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right . . . to revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered, or otherwise in accordance with § 40-35-310." T.C.A. § 40-35-311(e) (2012). Probation revocation rests within the sound discretion of the trial court, and this court will not disturb the trial court's ruling absent an

abuse of that discretion. <u>State v. Shaffer</u>, 45 S.W.3d 553, 554 (Tenn. 2001) (citing <u>State v. Harkins</u>, 811 S.W.2d 79, 82 (Tenn. 1991)). To establish an abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." <u>Id.</u> (citing <u>Harkins</u>, 811 S.W.2d at 82). Once the trial court decides to revoke a defendant's probation, it may (1) order confinement; (2) order the sentence into execution as initially entered, or, in other words, begin the probationary sentence anew; (3) return the defendant to probation on modified conditions as necessary; or (4) extend the probationary period by up to two years. <u>See State v. Hunter</u>, 1 S.W.3d 643, 647 (Tenn. 1999) (citations omitted); <u>State v. Larry Lee Robertson</u>, No. M2012-02128-CCA-R3-CD, 2013 WL 1136588, at *2 (Tenn. Crim. App. Mar, 19, 2013); <u>State v. Christopher Burress</u>, No. E2012-00861-CCA-R3-CD, 2013 WL 1097809, at *6 (Tenn. Crim. App. Mar. 18, 2013); T.C.A. §§ 40-35-308, -310, -311 (2012).

Yearwood has failed to demonstrate that the trial court abused its discretion in revoking her probation. "[P]roof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial judge to make a conscientious and intelligent judgment." <u>Harkins</u>, 811 S.W.2d at 82 (citing <u>State v. Milton</u>, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984)). Here, there is no dispute that Yearwood was arrested and incurred new charges while on probation. <u>Id.</u> at 83 n. 3 (along with corroborating evidence "a new arrest and pending charges are proper grounds on which a trial court can revoke a defendant's probation"). Yearwood admitted that she violated her probation based on her August 7, 2013 arrest for DUI and drug possession in Warren County. During the pendency of her Warren County charges, in February 2014, she was also arrested and incurred additional charges in Van Buren County. Finally, Officer Rowland testified that, despite being repeatedly advised, Yearwood failed to comply with the terms of her probation by refusing to make required payments or perform community service. Based on the aforementioned proof, we conclude that the trial court's revocation of Yearwood's probation was supported by substantial evidence. <u>See Harkins</u>, 811 S.W.2d at 83 (Tenn. 1991).

Citing <u>State v. Beard</u>, S.W.3d 730, 737 (Tenn. Crim. App. 2005), Yearwood asserts that revocation was improper because the trial court based its determination on her prior convictions. She references the following statement by the court: "I see a lot of harm in driving under the influence, possibility of being convicted of aggravated burglary, attempting to tamper with evidence, delivering amphetamines." However, the record reflects that the court's statement was in response to defense counsel's question, "How can the public be hurt by giving her the opportunity to get off these drugs and run her life successfully?" Yearwood also argues that revocation was improper because she was denied "a neutral and detached hearing body" in violation of her right to due process. <u>See State v. Wade</u>, 863 S.W.2d 406, 408 (Tenn. 1993) (citing <u>Gagnon v. Scarpelli</u>, 411

U.S. 778, 786 (1973)) (setting forth the minimum requirements for due process in revocation proceedings). She asserts that the trial court's statements demonstrated political influence and vindictiveness. The record, however, is devoid of any proof supporting this claim. While on probation for three different offenses, Yearwood was arrested multiple times, incurred numerous criminal charges in two different counties, lied to her probation officer, and repeatedly disregarded her obligation to pay fines, restitution, and perform community service. Based on this record, the trial court properly ordered Yearwood to serve the balance of her original sentence in confinement. Accordingly, she is not entitled to relief.

## CONCLUSION

Upon review, we affirm the judgment of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE